Multi-Lead Tool & Engineering Co. v. Commissioner.
Multi-Lead Tool & Eng'g Co. v. Commissioner
Docket No. 24247.
United States Tax Court
1951 Tax Ct. Memo LEXIS 314; 10 T.C.M. (CCH) 174; T.C.M. (RIA) 51050; February 28, 1951
*314 Edgar W. Pugh, Esq., 3353 Penobscot Bldg., Detroit 26, Mich., for the petitioner. Norment Custis, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion Deficiencies have been determined by the Commissioner in income tax for the calendar years 1943, 1944, and 1945, in the respective amounts of $440.54, $1,455.95, and $2,020.13, and for the year 1943 a deficiency in excess profits tax was determined in the amount of $1,484.28. The major issue arises from the Commissioner's disallowance of a portion of the salaries paid to petitioner's two officers. Findings of Fact Petitioner corporation is a Michigan corporation with its principal office located in Lansing, Michigan. The business was incorporated under date of January 28, 1936. Its returns for the periods here in question were filed with the collector of internal revenue for the district of Michigan. Petitioner company, since its inception, has been engaged in the business of engineering, designing, and manufacturing tools, dies, jigs, fixtures, gages and special machinery. Petitioner is engaged in special custom built work which is turned out for customers in the automobile industry and *315 the refrigeration industry such as General Motors and Nash-Kelvinator. There was no production work. Generally, contracts are secured through competitive bids. During World War II, which includes the years under consideration here, all of its work was incident to the war activity. Petitioner was organized by four men, namely, E. E. Judge, L. B. Sabin, L. T. Deason and Emil Nowitzke. These men had known one another for a number of years prior thereto and their education and experience in the tool and die field were very similar. It was agreed among the four incorporators, who also became the principal officers of petitioner, that compensation in the form of monthly salaries would be paid equally to each, although the total salaries paid to each for the year 1936 were not quite equal due to the fact that two of the officers assumed their duties earlier and devoted more time to the business than the other two. In February, 1937, due to some differences of opinion, Judge and Deason withdrew from petitioner company and formed another corporation, also in Lansing, Michigan, under the name of Industrial Metal Products Corporation. This company has been and still is engaged in the same *316 type of business as petitioner and is in direct competition with it. After Judge and Deason left petitioner company, Mr. Sabin became president and Mr. Howitzke, secretary-treasurer. They occupied these respective positions during the years 1944 and 1945, the years in which their salaries were questioned. All of the 1399 1/5 shares of the issued and outstanding stock, except 2 2/5 shares, was owned equally by Sabin and Nowitzke, and substantial cash dividends were paid on the stock for the years 1941 through 1947. The following table shows net sales, the total compensation paid Sabin and Nowitzke, which was divided equally between them, and the net income of the petitioner company according to its income tax returns for the year 1938 through 1945, inclusive. Compensation
Year
Net Sales
of Officers
Net Income
1938
$ 28,024.44
$ 5,400.00
$ 774.92
1939
41,687.17
10,800.00
1,671.76
1940
83,546.45
14,400.00
3,685.40
1941
160,072.83
24,000.00
30,270.06
1942
296,941.34
28,500.00
97,102.30
1943
240,630.77
30,000.00
60,359.65
1944
141,465.61
30,000.00
(3,362.22)
1945
139,533.25
30,000.00
(1,335.17)
Petitioner's officers were *317 paid $14,250.00 each in 1942 and $15,000.00 each in 1943 and these salaries were allowed by the Commissioner. During the year 1943 petitioner employed an average of 32 employees, but as of July 1, 1944, The War Manpower Commission established the labor ceiling at 22 employees. Just prior to the establishment of the labor ceiling, a large contract with Nash-Kelvinator had been cancelled, and in consequence thereof petitioner laid off several employees. Requests to The War Manpower Commission to raise the number of employees they could hire from 22 to 30 were denied, although early in 1945 permission was granted to increase the number of employees to 24. The decline in petitioner's net sales for the years 1944 and 1945 from the preceding war years was principally caused by the limitation on the number of employees that it could employ and the fact that war contracts were more difficult to obtain. However, petitioner's officers, Sabin and Nowitzke, worked longer hours and their duties were as great, if not greater in the years 1944 and 1945 than they were in comparison to the years 1942 and 1943. The Industrial Metal Products Corporation is a little larger company than petitioner. *318 During the fiscal year ending October 31, 1942, it employed between 42-45 men, and its net sales were $388,722.64 with a net profit of $129,371.56. As compensation for its four officers it paid salaries totalling $64,500.00, as follows: E. E. Judge
$20,000.00
L. T. Deason
20,000.00
Paul Griffith
12,500.00
Ray Reas
12,000.00
$64,500.00
In 1943 the Industrial Metal Products Company applied to the Salary Stabilization Unit for permission to increase the compensation of its officers, and in December, 1943, permission was granted to increase both Judge's and Deason's salaries to $22,000.00 each and Griffith's to $14,000.00 and Reas' to $13,500.00 It continued to pay these latter salaries throughout 1944 and 1945. Its sales for the years ending in 1944 and 1945 were approximately $440,000.00 and $460,000.00, respectively. A reasonable salary for each of petitioner's two officers, Sabin and Nowitzke, for each of the calendar years 1944 and 1945 is $15,000.00 per annum. On its income tax returns, petitioner reported a net loss of $3,362.22 for the year 1944 and a net loss of $1,335.17 for the year 1945. Petitioner has consented to slight adjustments each year *319 reducing the 1944 loss to $3,237.22 and the 1945 loss to $1,147.67. A determination in favor of the petitioner allowing the salaries in full would entitle petitioner to a loss carry-back of the 1944 loss to apply against taxable income for the year 1942 and similarly a loss carry-back of the 1945 loss against taxable income for the year 1943. In addition, petitioner would have unused excess profits tax credits for the years 1944 and 1945 which it would be entitled to carry back and apply against excess profits net income for the years 1942 and 1943, respectively. Opinion ARUNDELL, Judge: At the conclusion of the hearing in this cause and after argument by counsel, the Court announced that in its opinion, based on the testimony presented, the salaries paid by petitioner to its two officers of $15,000.00 per year each were reasonable in amount and should be allowed as deductions in computing petitioner's taxes for 1944 and 1945. It appears that in 1942 the salaries of these officers had been fixed at $15,000.00 per annum each and they were so compensated during a portion of 1942 and all of 1943. The Commissioner did not question the reasonableness of this compensation. In the *320 years 1944 and 1945 the deduction for salaries to the two officers was reduced by the Commissioner from $15,000.00 each to $10,500.00 each and this action was apparently prompted by the temporary reduction in the business volume and profits of the taxpayer. The petitioner produced two witnesses, Judge and Deason, who had formerly been associated in the business of petitioner and who are now the principal officers in a competing business. These witnesses, who were thoroughly conversant with petitioner's business, and who, moreover, were well acquainted with the qualifications and duties performed by Sabin and Nowitzke, testified that these two officers were each worth, during the taxable years in question, not less than $15,000.00 per annum. They testified further that in their organization two officers who were less qualified and whose services were of less importance, were being paid, respectively, $14,000.00 and $13,500.00 per annum. The respondent offered no testimony with reference to the reasonable value of the services of petitioner's officers. On the whole record, we are of the opinion that the salaries as paid in the amount of $15,000.00 to each officer during the years *321 1944 and 1945 should be allowed as deductions in computing petitioner's net income. The parties have agreed on various adjustments, including certain loss carry-backs and unused excess profits tax credits, all of which are set forth in some detail in our findings of fact, and these adjustments will be given effect in the final computation. Decision will be entered under Rule 50.